UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 5:17-CR-52-KKC-REW |
| v. | ) | |
| MELVIN TREMAYNE MAHONE, JR., and LISA CHARISE MAHONE, | ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

\*\* \*\* \*\* \*\* \*\*

The Court addresses the status of Hon. Jerry L. Wright as counsel for Defendant Lisa Charise Mahone. The Indictment charges Ms. Mahone and Co-Defendant Melvin Tremayne Mahone, Jr. (her son), with a variety of crimes, centered on (as relevant to her) an alleged conspiracy between them to distribute a mixture or substance containing a detectable amount of heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846. DE #1 (Indictment). Ms. Mahone also faces individual distribution charges, as well as an allegation of attempting to possess with the intent to distribute a mixture or substance containing heroin and fentanyl. *Id.* All such particular conduct as alleged was within the same temporal and geographic scope as the overall conspiracy.

At Ms. Mahone's initial appearance and arraignment, Mr. Wright notified the Court "of a potential issue in the case regarding his prior joint representation of the Co-Defendants on criminal charges in state court." DE #11, at 1 n.1. The Court immediately cited concern over whether Mr. Wright's prior state-court representation of both Mahones on charges related to the same conduct would create an actual or potential conflict of

1

interest, threatening either Mahone's (or both Mahones') Sixth Amendment right(s) to effective and conflict-free counsel. *See* DE ##11, 16, 20, 22, 29.

The Court, thus, scheduled a hearing on the topic and appointed separate, independent counsel—Hon. Benjamin D. Allen—"for the limited purpose of advising [Ms. Mahone] with respect to the prior joint representation issue and the issues pertinent to the . . . hearing." DE #16 (Order). Mr. Mahone already has separate counsel, Hon Jeffrey A. Darling, a CJA appointee. At the April 26, 2017, hearing, the Court advised each Defendant in detail of the contours of the individual right to effective assistance of counsel, including conflict-free representation. "Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." Fed. R. Crim. P. 44(c)(2). There was not good cause to forestall further inquiry. Indeed the nature of the charges, the dynamics of the prior joint representation in this specific case, the Kentucky ethics rules, federal court policies, and the Court's experience all pointed toward the need for further development, inquiry, and protective measures.

The detention hearings painted a picture of the underlying proof. The Government will endeavor to prove a trafficking conspiracy involving both Mahones stretching from late spring to early fall of 2016. Peppered throughout are individual trafficking acts by Ms. Mahone. The investigatory apex, or perhaps conclusion, was an October 20, 2016, raid at Mr. Mahone's residence in Lexington, yielding significant incriminating contraband. Per the United States's proffer, Ms. Mahone was on her way to Mr. Mahone's residence on October 20 to pick up drugs for distribution at a controlled buy. The state charged the Mahones for virtually all of the same conduct reflected in the

federal indictment, though without the conspiracy or arrest date conduct as to Ms. Mahone. At the point of later federal arrest, the Mahones were physically at the same location, and police found Lisa Mahone in possession of nearly an ounce of cocaine on that date. At the hearing, Mr. Wright claims he did not talk to either Mahone about the other, as part of his representation of them in Madison and Fayette Circuit Court. Mr. Wright did, however, of course confer with each defendant about the state charges targeting that defendant.

At the conflict hearing, the Court heard extensively from all attorneys and advised and queried both Mahones under oath as to the conflict issues, waiver elements, and Defendants' rights in the matter. The Court implemented a full *Curcio* rubric, cataloging a series of possible scenarios (with concrete examples provided) that could threaten to place the interests of the Co-Defendants at odds and thus strain or make impossible Mr. Wright's ability to fulfill all fiduciary and other duties owed both Defendants—Ms. Mahone as a current client and Mr. Mahone as a former client.[1] The colloquy engaged the Mahones, both under oath and deemed competent after inquiry, in a narrative discussion.

At the hearing, both Defendants unequivocally sought to waive the right to conflict-free counsel, to consent to the status quo, and to allow Mr. Wright to continue to represent Ms. Mahone. Further, Ms. Mahone filed a written waiver. DE #26-1.[2] For the

---

[1] Virtually all of the duties relevant to a current client analysis apply with equal force to former clients. *See* Ky. Sup. Ct. R. 3.130(1.9); *id.* cmt. (1) ("After termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest[.]"); *Humco, Inc. v. Noble*, 31 S.W.3d 916, 920 (Ky. 2000) (noting "an attorney's duty of loyalty and confidentiality to a former client"); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1352 (6th Cir. 1993) (An attorney "continues to have an ongoing duty to his former client[.]").

[2] Mr. Darling, Mr. Mahone's counsel, stated in open court that Mr. Mahone had executed a waiver and that he (Darling) would promptly file it in the record. As of the time of this Opinion's issuance, however, Mr. Darling has filed no such waiver. Rule 1.9(a) arguably

3

reasons that follow, the Court rejects each Defendant's putative waiver and disqualifies Mr. Wright from representing Ms. Mahone in this case. Counsel Wright acted as the lawyer for both Mahones on state charges that effectively blanket the federal case. In this scenario, the Court finds that Wright's prior joint representation of the Mahones on the subject matter of the Indictment and the resulting serious potential for conflict foreclose Mr. Wright's representation of Ms. Mahone.

*Legal Principles*

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const., amend. VI. A criminal defendant presumptively has the constitutional right to retained counsel of her choice. *Wheat v. United States*, 108 S. Ct. 1692, 1700 (1988). However, "the essential aim of the Amendment is to guarantee an effective advocate for each defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom [s]he prefers." *Id.* at 1697. Thus, the presumption may be "overcome" by a "demonstration of actual conflict" or "by a showing of a serious potential for conflict." *Id.*; *accord United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *Serra*, 4 F.3d at 1354; *see also Wood v. Georgia*, 101 S. Ct. 1097, 1103 (1981) (right to conflict-free counsel is "correlative right").

A conflict actually exists, in a scenario of this type, "when the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,' or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Jones*, 381 F.3d at 119 (quotation omitted). "An attorney has a potential conflict of interests if the interests of the defendant *could* place the

---

requires a written waiver here, which really is Mr. Wright's obligation to secure—he is the one in the conflict quandary.

4

attorney under inconsistent duties in the future." *Id.* In either situation, the Court *may* reject an otherwise valid waiver of the Sixth Amendment right to conflict-free counsel. *Wheat*, 108 S. Ct. at 1699. "A defendant enjoys a presumption in favor of counsel of choice, but such a presumption may be overcome because such a choice must be balanced with the court's interest in the integrity of the proceedings and the public's interest in the proper administration of justice." *United States v. Swafford*, 512 F.3d 833, 839 (6th Cir. 2008) (internal quotation marks omitted). "In situations where a potential conflict of interest may arise, the court's interest in the integrity of the proceedings may trump the defendant's choice." *Id.* "A district court has broad discretion to remove counsel for a potential conflict, even if the defendant wishes to waive the conflict." *United States v. Matsa*, 540 F. App'x 520, 523 (6th Cir. 2013).

"In general, in deciding whether to accept a defendant's waiver of conflict-free counsel, a district court must determine (i) whether the defendant's waiver is sufficient and (ii) whether the conflict is of a type which can be waived." *United States v. Cardin*, 577 F. App'x 546, 552 (6th Cir. 2014). "The first inquiry focuses on the specific defendant before the district court. The second inquiry focuses on the integrity of the judicial system generally." *Id.* "The district court is to be given wide latitude in making such determinations [regarding disqualification] and a decision will be upheld unless arbitrary or without adequate reasons." *Swafford*, 512 F.3d at 839 (internal quotation marks omitted); *Wheat*, 108 S. Ct. at 1699 ("[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest . . . in the more common cases where a potential for conflict exists which may or may not burgeon into an actual

conflict as the trial progresses."); *see also, e.g.*, *United States v. Shearburn*, No. 3:15-CR-5-GFVT-REW, 2015 WL 12999704 (E.D. Ky. July 10, 2015) (describing the standards).

*Waiver*

Generally, a defendant may, "in the absence of compelling circumstances," waive the right to conflict-free counsel. *United States v. Davis*, 490 F.3d 541, 548-49 (6th Cir. 2007) (quoting *United States v. Reese*, 699 F.2d 803, 805 (6th Cir. 1983) (*per curiam*));[3] *see also Jones*, 381 F.3d at 117-20 (court may accept valid waiver of right to conflict-free counsel where only potential conflict exists). Of course, any waiver must reflect that the party waiving is competent and acting in a knowing, voluntary, and intelligent fashion. *Jones*, 381 F.3d at 119; *United States v. Curcio*, 680 F.2d 881, 887 (2d Cir. 1982). To assess the validity of a waiver of the right to conflict-free counsel, the Second Circuit established the following now venerated procedure, which the Court here adopted: (1) advise of right to conflict-free counsel; (2) instruct as to dangers; (3) permit conference with chosen counsel; (4) encourage independent advice; (5) allow reasonable time for decision; and (6) engage in narrative colloquy to ensure that defendant understands risks and freely chooses to run them. *United States v. Rodriguez*, 968 F.2d 130, 138-39 (2d Cir. 1992) (outlining steps for "*Curcio* hearing" in context of conflict waiver). The Court found both Defendants competent based on questioning under oath. The Court, premised

---

[3] In a contemporaneous case, the Sixth Circuit questioned whether this standard—accept a waiver absent contra compelling circumstances—survived *Wheat*'s "substantial latitude" analysis. *United States v. Brock*, 501 F.3d 762, 772 (6th Cir. 2007) (citing *Reese* and noting the potential disharmony with *Wheat*), *abrogated on other grounds by Ocasio v. United States*, 136 S. Ct. 1423 (2016). However, *Davis* did reaffirm the "compelling circumstances" standard, and the Sixth Circuit earlier had likewise applied the rule in a post-*Wheat* decision, *United States v. Guerrero*, No. 88-5986, 1990 WL 166414, at *6 (6th Cir. Nov. 1, 1990) ("[W]e hereby reaffirm our holding in *Reese* and require the trial court to accept a valid waiver absent exceptional circumstances."); *but see United States v. Mays*, 69 F.3d 116, 122 (6th Cir. 1995) (recognizing, as a general matter, that the "broad language of *Reese* . . . has been implicitly limited by subsequent decisions").

on the lengthy and dynamic discussion at the hearing, also finds that each knowingly, intelligently, and voluntarily sought to waive his or her right to conflict-free counsel.

At the *Curcio* hearing, attorneys Darling, Wright, and Allen each represented that he had discussed with his respective client the potential conflicts and consequences that could arise as a result of Wright's prior joint representation. According to the attorneys, Ms. Mahone persisted in her desire to retain Mr. Wright, and Mr. Mahone endorsed that posture.[4] Mr. Wright advised that he believes he can ethically represent—and is ethically representing—Ms. Mahone, even in light of his prior representation of Mr. Mahone. The Court discussed on the record the potential conflicts and then examined the Mahones concerning their willingness to waive any actual or potential conflict. Under oath, each professed to understand the possible conflicts. Defendants stated (as part of a detailed discussion by and with the Court) that they perceived and were aware of issues—in the context of prior joint representation on the same substantive charges—that may arise with respect to the attorney-client privilege; the duties of loyalty, confidentiality, communication, and zealous advocacy; potential pretrial motions; effective cross-examination; plea negotiations; conflicting versions of the facts or levels of culpability; possible defenses; general trial strategy; and sentencing (to include post-conviction) considerations.

---

[4] Darling filing Mr. Mahone's written waiver, if indeed he executed one, would further solidify this conclusion. Still, the Court notes some degree of discomfort in accepting Mr. Mahone's waiver as valid in the circumstances: (1) Mr. Darling's tendered position statement, DE #27, simply declares Mr. Mahone "has no objection to deferring to his mother's wishes regarding her representation" and that Mr. Mahone "would defer to the Court" to make the final decision; (2) it appeared, from the comments at the hearing, that Mr. Mahone perhaps chiefly based his waiver decision on his co-defendant's status as his mother; and (3) Mr. Mahone's waiver decision also appears, from the comments at the hearing, possibly to be against the advice of his counsel. However, at bottom, Mr. Mahone himself unequivocally (and knowingly, intelligently, and voluntarily) sought to waive any Wright-related conflict at the *Curcio* hearing.

Moreover, at the hearing, the United States shared a general overview of its assessment of the case, adding to the Court's awareness from the two detention hearings. The United States emphasized two concrete scenarios where it perceived a potential for conflict: (1) possible pre-trial cooperation from either Defendant, and (2) potential cross-examination (particularly Wright's potential cross of Mr. Mahone). The Government gave a hypothetical in which Mr. Mahone made a material statement at trial inconsistent with a statement previously made to Mr. Wright. Wright could be stuck in an impossible situation between his duty to zealously advocate for Ms. Mahone (his current client) by exposing the inconsistency and his duties of confidentiality and loyalty to Mr. Mahone (his former client) by keeping the former communication protected. The prosecutor further confirmed that in a conspiracy case, such as this, there likely may be some level of adversity between the Co-Defendants, given proffered conversations between the Mahones and, indeed, other unindicted co-conspirators, and given likely forthcoming plea-related offers to each Defendant.[5] Counsel and the Court discussed the possibility that if any of the various potential serious conflicts actually arises closer to (or at) trial, Mr. Wright most certainly would have to withdraw from representing Ms. Mahone, and she would then need new counsel, likely prolonging the proceedings.

The Court endeavored to apprise the Mahones of all issues and ascertain their comprehension, and the Court does not doubt that each intends to waive the right to

---

[5] The prosecutor confirmed that such offers would certainly come in this case. Mr. Mahone, likely facing 20 years to life, particularly disclaimed any interest in cooperation at the hearing, but all counsel confirmed that this is a scenario in which the topic must, at least, receive serious consideration. Given the potential penalties and Defendants' statements, counsel made clear at the hearing that a trial may indeed result from the charges. The family dynamic between the Co-Defendants is a distinct factor in this particular case.

conflict-free counsel so as to permit Mr. Wright to remain as counsel for Ms. Mahone. All counsel ultimately agreed that the waivers were valid.

*Acceptance / Rejection of Waiver*

The right to waive conflict-free counsel, however, is not absolute and is subject to the judiciary's systemic interests in Sixth Amendment principles, judgment validity, and ethical practice, which *Wheat* recognized. *See* 108 S. Ct. at 1698; *accord Jones*, 381 F.3d at 119 (The "disqualification issue . . . implicates not only the accused's right to counsel, but also the interests of the judiciary in preserving the integrity of its processes and the government's interest in ensuring a fair and just verdict"). Thus, the Supreme Court grants trial courts "substantial latitude in refusing waivers of conflicts of interest[.]" *Wheat*, 108 S. Ct. at 1699; *accord United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2565-66 (2006) (recognizing trial courts' "wide latitude in balancing the right to counsel of choice against [*e.g.*,] the needs of fairness"). Ultimately, the Court may reject a waiver where there exists either an actual or potential conflict. *Wheat*, 108 S. Ct. at 1699.

Precise forecasting of conflicts that could arise is impossible, greatly complicating the process here. *Id.*[6] In some scenarios, the greater risk is not what an attorney acknowledging a prior joint representation situation will *do*, but what the potential conflict(s) may *prevent* him from doing. *Curcio*, 680 F.2d at 887. The Court looks both to state ethical rules and federal standards in assessing whether a conflict exists or may surface. *See* LCrR 57.3(c) (addressing discipline for violating "rules of the Kentucky

---

[6] The Court covered this uncertainty in detail at the April 26 hearing; Defendants plainly understood. As the Supreme Court has eloquently explained: "Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Wheat*, 108 S. Ct. at 1699.

9

Supreme Court governing professional conduct" or "other conduct unbecoming an officer of the Court"); *United States v. Stiger*, 251 F. App'x 508, 511 (10th Cir. 2007) (referencing, in disqualification context, "local rules of the court" and "standards developed under federal law") (citation omitted).

Against these principles, the Court is mindful of the potential that Mr. Wright, who previously represented both Co-Defendants on identical subject matter, may be unable to argue relative involvement and culpability that would minimize his current client's guilt but emphasize his former client's, effectively cross-examine his former client to that client's detriment but to the benefit of the current client, or effectively guard both the duties of loyalty and confidentiality to a former client *as well as* the duties of communication and zealous advocacy to a current client. *Wheat*, 108 S. Ct. at 1967-1700; *see also Curcio*, 680 F.2d at 887 (acknowledging risks with respect to cross-examination and relative culpability). Wright fully acknowledged "that issues could arise that could place [him] in an awkward position based upon having represented both parties[.]" DE #26, at 6. Indeed, he candidly recognized that it might "be wise for the Court to err on the side of caution and appoint different counsel for [Ms. Mahone] or allow her to retain additional private counsel." *Id.* at 7.

Prior joint representation potentially creates sharp difficulties in observing the ethical obligation to maintain former client confidences, *Serra*, 4 F.3d at 1352; Ky. Sup. Ct. R. 3.130(1.9)(c), and effectively advising and representing the current client in a variety of situations in which a piece of information would be harmful to a former client but beneficial to a current client. *United States v. Brock*, 501 F.3d 762, 772 (6th Cir. 2007); *Curcio*, 680 F.2d at 887; *see also Serra*, 4 F.3d at 1350-51 (noting United States's

argument that conflict could interfere with plea negotiations); *United States v. Baird*, No. CRIM.A. 6:05-30-DCR, 2005 WL 1676898, at *1 (E.D. Ky. July 15, 2005) (same); Ky. Sup. Ct. R. 3.130(1.9) cmt. (3). The difficulties could here include use (or non-use) of information during plea negotiations, in consideration of pretrial motions, during cross examination at trial (or indeed other trial contexts), and at sentencing. The Court thus considers whether the consequences of these potential conflicts, all of which realistically could arise here, outweigh the Defendants' right to waive conflict-free counsel.

The competing loyalties and informational duties could compromise, for example, Mr. Wright's ability to vigorously and completely cross-examine Mr. Mahone (a former client) as to Ms. Mahone's (the current client's) culpability, as to Mr. Mahone's credibility, or regarding factual matters Mr. Wright learned from Mr. Mahone or learned about Mr. Mahone during the prior representation. *See Wheat*, 108 S. Ct. at 1695 (noting limits on questioning witness that would prevent cross-examination "in any meaningful way"); *Moss v. United States*, 323 F.3d 445, 460 (6th Cir. 2003) (acknowledging a "fear" that a lawyer in this situation "will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information," the "most common example" being where "an attorney's former client serves as a government witness against the attorney's current client at trial"); *United States v. Dively*, Criminal No. 3:07-01, 2007 WL 2008501, at *4 (W.D. Pa. July 5, 2007) (stating in context of disqualification related to former-client conflict, "*Wheat*'s legacy is judicial skepticism that an attorney faced with the prospect of cross-examining his own client during a criminal proceeding can effectively represent either the witness or the defendant on whose behalf he performs the

examination"); *United States v. Hreljac*, Criminal Action No. 6:06-96-S-DCR, 2007 WL 38372, at *2 (E.D. Ky. Jan. 5, 2007) (disqualifying based on former-client rule).

This concern is especially sensitive here due to the possible proof differences and postures, relative to the evidence, between the two defendants. *See, e.g.*, *Wheat*, 108 S. Ct. at 1699 (noting myriad potential problems when counsel "proposed to defend three [here, two] conspirators of varying stature in a complex drug distribution scheme"). Ultimately, if Mr. Wright learned information from Mr. Mahone during the course of that prior representation that is helpful to Ms. Mahone but harmful to Mr. Mahone, he will face a dilemma to which there is no ethical solution; whether he uses or withholds the information in any of the identified concrete scenarios, he improperly acts to the detriment of either his former or current client.

At the April 26 hearing, for example, counsel discussed the proffer that a cooperating confidential witness places Ms. Mahone in the conspiracy and as an active participant at the American Avenue (Mr. Mahone's) address. Ms. Mahone, as the hearing comments made plain, disputes this account, any involvement in a conspiracy with her son, and committing crime at American Avenue. Mr. Mahone likewise stated that there was no conspiracy between him and his mother. The pair, indeed, did not face a state conspiracy charge. Whatever charging decisions the Commonwealth made, however, the Mahones face the federal charges they now face (including a joint conspiracy allegation, supported by probable cause). Mr. Wright affirmed, as relevant, that he learned "a ton" from Mr. Mahone from the prior representation about the alleged events of the central October 20 day and concerning activities at the American Avenue address, privileged knowledge that Mr. Wright could not use against Mr. Mahone, or for the benefit of Ms.

Mahone, without violating an ethical duty to one or the other. Wright stated that he talked about the charges and the underlying conduct with both Mr. and Ms. Mahone—*i.e.*, that he represented both Mahones on the subject matter of the current Indictment, or, at the very least, a "substantially related matter." *See* Ky. Sup. Ct. R. 3.130(1.9)(a); *id.* cmt. (3).

Especially in the circumstance in which the Defendants apparently dispute the Government's theory of the case and the Defendants' connection, Wright could find himself in an untenable situation of either betraying a former client privilege or being unable to zealously represent his current client. Wright expressly agreed at the hearing that the current case covers the same basic charge content on which he represented both Mahones in state court. Ms. Mahone will, for example, likely deny any connection with American Avenue, perhaps, thus, logically assigning all blame to Mr. Mahone; this feasibly also could occur vice versa, at least as to Madison County conduct. One Defendant may well deny all connection to the alleged conspiracy, attempting to shift the jury's focus to the other. Wright agreed that he learned much in confidence from Mr. Mahone concerning American Avenue before Ms. Mahone faced American-Avenue-related charges. Wright agreed at the hearing that the inclusion of a federal conspiracy allegation, in this scenario, puts him "in a spot" practically and ethically. *See* Hrg. Audio at 55:10.

Further, given the United States's comments at the *Curcio* hearing, other potential conflicts may develop. If the United States seeks to enter a plea agreement with Ms. Mahone in exchange for testimony or other cooperation, Mr. Wright may be unable to advise her fully and freely in plea negotiations without violating his ethical obligations to Mr. Mahone. Wright fully recognizes this. DE #26, at 6. If both Defendants proceed to

trial, Mr. Wright would face unenviable decisions regarding cross examination (and use of information during that cross) of a former client. *See id.* Defendants may desire to argue inconsistent defenses (a distinct possibility on these facts, given the statements at the *Curcio* hearing), leaving Mr. Wright in an ethical quandary, if he learned any information contrary to Mr. Mahone's trial defense from Mr. Mahone in the prior representation. *See, e.g.*, *United States v. Hacker*, No. 6:06-82-SS-DCR, 2006 WL 3392763, at *3 (E.D. Ky. Nov. 22, 2006) (disqualifying attorney, countenancing "her duties to a former client and her obligation not to disclose confidential information to the disadvantage of her former client"); *United States v. Almany*, 621 F. Supp. 2d 561, 576 (E.D. Tenn. 2008) (disqualifying attorney for same, and additional, reasons). Finally, if a jury finds both Defendants guilty, and if the evidence supports that one Mahone played a greater role in the alleged conspiracy than the other, Mr. Wright's continuing ethical obligations to Mr. Mahone may stymie his ability to argue relative responsibility in an effort to minimize Ms. Mahone's sentence. The Court simply cannot permit Defendants and Mr. Wright to continue forward into this virtual minefield of potential, highly appreciable conflicts.

Without question, both Defendants stridently advocate for waiver and the status quo on representation. Ms. Mahone wants the counsel she's chosen, and Mr. Mahone, the dutiful son, is willing to accommodate his mother. Each professes to know nothing of the other's problems, and Mr. Mahone assures he will never cooperate or testify against his mother. Unfortunately, the glaring limits of sound fortune-telling affect us all; neither the Defendants nor the lawyers can know with any confidence the future course of this case. It is a certainty, though, that the United States will, through the typical pursuit of

conviction, place choices before and pressures on each Mahone that require unfettered advice from a zealous advocate. Further, it is a certainty that any trial would involve testimonial decisions and strategic elections that turn on a host of delicate analyses. Mr. Wright undoubtedly knows details regarding Mr. Mahone and his case, a case that targets a charged conspiracy, a common address of import, and a key common pinnacle of alleged conduct. The risk that Wright's duties will whipsaw him and compromise his advocacy is one the Court simply will not countenance. In this case of charge and sentence gravity, with life-long implications for each Defendant, the circumstances compel rejection of the putative waivers. *See United States v. Cortez*, 205 F. Supp. 3d 768, 777 (E.D. Va. 2016) ("Of course, there is clearly an actual conflict of interest in the event the government calls Funk as a witness in its case against defendant. Were that to occur, Defense Counsel would face an intolerable choice between (i) pulling punches on cross-examination (to defendant's detriment), or (ii) undermining the admissibility, credibility, and weight of Funk's testimony (to Funk's detriment)." (footnote omitted)); *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996) ("Because of the lawyer's continuing duty of confidentiality, the representation, be it simultaneous or successive, of more than one defendant charged in the same criminal conspiracy inevitably presents a conundrum for the lawyer who is so engaged."); *United States v. Bikundi*, 80 F. Supp. 3d 9, 17-18 (D.D.C. 2015) ("As numerous cases have recognized, Rule 1.9 requires disqualification when a former client seeks to cooperate with the government and testify against the present client." (internal alteration removed)).

*Conclusion*

The facts to this point are few and likely in dispute (between Defendants and the United States, and possibly between Defendants themselves). Questions swirl regarding the connection, if any, between the Mahones, American Avenue, the events of October 20, and possible other actors in the alleged conspiracy. The record, obviously, is premature. As *Wheat* so articulately stated, to discern party connections and thus assess conflicts at this stage is to look "though a glass, darkly." 108 S. Ct. at 1699. The dynamics and issues, though, for all the reasons stated, convince the Court that there is a serious potential for conflict in this case. The discretionary analysis in considering whether to permit waiver is fact- and circumstance-specific. *Id.* at 1700. For the reasons discussed, the Court perceives a significant risk, on this record, that Mr. Wright's continuance as counsel could transgress applicable ethical standards and compromise Defendants' Sixth Amendment rights, the integrity of the judicial process, and the validity of the trial result.

Accordingly, per this analysis, the Court rejects each Defendant's waiver of the right to conflict-free counsel and **DISQUALIFIES** Mr. Wright from representing Ms. Mahone in this case. The Clerk **SHALL TERMINATE** Mr. Wright as counsel. Ms. Mahone still has, of course, the right to retain separate, conflict-free counsel. However, to avoid any period of non-representation, the Court formally **APPOINTS** Mr. Allen to represent Ms. Mahone under the CJA. If Ms. Mahone retains a new attorney, and that attorney enters an appearance, the Court will address any resulting motions.

\* \* \* \* \*

The Court issues this Order resolving a non-dispositive pretrial matter under 28 U.S.C. § 636(b)(1)(A). Any party objecting to this Order should consult the statute and Federal Rule of Criminal Procedure 59(a) concerning its right of and the mechanics for reconsideration before the District Court. Failure to object waives a party's right to review.

This the 5th day of May, 2017.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge